

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable M. E. Gates
County Attorney
Walker County
Huntsville, Texas

This Opinion
Overrules Opinion
#O-4656-7057-7053

2w for for as they drifted

Dear Mr. Gates:

Opinion No. 0-7241

Re: Construction of S. B. 167,
49th Legislature – State
Equalization School Law.

This will acknowledge receipt of your letter asking for our opinion upon the above-captioned subject-matter, your letter being in part as follows:

> "As County Attorney of Walker County, I have been requested by Dr. Joseph R. Griggs, Superintendent of the Huntsville School, to present a question of legal interpretation relative to the state equalization law as it applies to the application of that law to the Huntsville Independent School District. I have before me your Opinion No. 0-2357a, Re: Eligibility of Graham Independent School District for Transportation. On page 3, paragraph 2 of that opinion, you make this statement: 'Special statutory provisions control those which are merely general.'
>
> "* * *.
>
> "The question I now present to you is really an interpretation of your statement that 'Special statutory provisions control those which are merely general.' Does this mean that the special provision of Article V take precedence over the general eligibility provisions of Article I, section 1, and especially as it relates to paragraph 4 of section 1.
>
> "The Huntsville Independent School District does conform to the county unit system of transportation and it receives no other type of aid, either tuition or salary, and it does comprise three or more consolidated districts and it contains fifty square miles or more of territory, and it is applying for transporta-

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable M. E. Gates - page 2

tion aid only on a transportation budget which
shows a need therefor on the basis and at the
rate provided in this Act. Under these circum-
stances, is the Huntsville Independent School
District eligible to receive such transporta-
tion aid only, irrespective of any provision
of section 1, with the approval of the Director
of Equalization and the Legislative Accountant?"

At the time your request came in this Department was con-
sidering the propriety of a re-consideration of Opinion No. O-2357a,
touching the question involved, and the result of our conferences
is the basis for this reply.

Your question calls for a construction of Senate Bill No.
167, Chapter 361 of the Regular Session of the 49th Legislature,
particularly Articles I and V thereof.

Section 1 of Article I deals with the general subject of
Eligibility for Aid, and is as follows:

"Scholastic Population of the District.
State aid under the provisions of this Act
shall be distributed in such a way as to as-
sist all school districts which have not fewer
than twenty (20) nor more than twelve hundred
fifty (1250) original enumerated scholastics
within the grades classified to be taught re-
maining in the district after transfers out,
and consolidated and/or rural high school dis-
tricts which have an average of not more than
two hundred (200) scholastics of each original
district composing the consolidated and/or
rural high school district unit; provided that
the maximum limitations as to scholastic popu-
lation for eligibility herein set forth shall
not apply for any type of aid to any school
district which is nine (9) miles or more in
length or contains forty-eight (48) square
miles of territory or more, provided there is
not located in such district an incorporated
city or town having a population of more than
thirty-six hundred (3600) inhabitants, accord-
ing to the last preceding Federal Census; pro-
vided further, that the maximum limitations as
to the scholastic population for eligibility,
herein set forth, shall not apply to any school

district which has forty-five percent (45%) or more of its area submerged. Districts maintaining a school at home and having less than an average of one enumerated scholastic per square mile are exempt from said minimum scholastic requirement and are eligible for aid for only one teacher unless a geographical barrier necessitates the operation of two schools for the same race in said district, such geographical barrier 'to be determined by the State Department of Education ard subject to the approval of the Legislative Accountant. If they can show budgetary need therefor, all other districts having less than said minimum scholastic requirement shall be eligible for only tuition and transportation aid to the nearest accredited school on enumerated scholastics whose grades are not taught in such district.

"All school districts in this state which have received transportation aid only on a transportation budget, during the biennium ending August 31, 1945, notwithstanding any of the provisions of any preceding or subsequent provision of this Act, shall be authorized to receive the same type of aid which it formerly received to the extent of Two Dollars ($2.00) per month per pupil on pupils actually transported who live two and one-half (2 1/2) miles or more from the school to which they are transported, provided it can show transportation budgetary need therefor.

"Provided that school districts in counties having a scholastic population equivalent to one-half of one pupil per square mile or less in the entire county may be exempt from the average daily attendance requirement and the teacher-pupil quota requirement of this Act, if it is so recommended by the State Superintendent of Public Instruction and approved by the Legislative Accountant, for the purpose of maintaining a high school of sixteen affiliated units, with seven teachers; but in no instance may the cost to the equalization fund exceed Twenty-five Dollars ($25.00) per pupil in such district.

"No school district will be eligible for any type of aid, except tuition aid, under the provisions of this Act, which pays any salary above those specified in this Act from any state, local, or Federal funds whatsoever except Federal funds, used to supplement salaries of Vocational Agriculture, Home Economics and Trade and Industries teachers, and funds from the Federal Lanham Act.

Honorable M. E. Gates - page 4

"Provided that the salaries of athletic
directors, band directors or lunch room supervisors
may be supplemented, from funds derived from sources
other than taxes, without making the school ineligi-
ble under this Section; and provided further, that
teachers who also serve as bus drivers, but who per-
form no administrative duties, may be paid an addi-
tional salary as bus drivers out of any funds of the
district derived from a local maintenance tax in ex-
cess of the local maintenance tax of Fifty Cents
(50¢) on the One Hundred Dollars ($100.00) valuation
required to be levied by Section 2 of Article I here-
of; provided further, that the additional salary paid
for serving as bus driver shall conform to the salary
scale paid other bus drivers of the district, and an
itemized list of all such supplements shall be fur-
nished the State Department of Education and the Legis-
lative Accountant with the general budget of the dis-
trict."

Article V, dealing with the specific subject of Trans-
portation Aid, is as follows:

"The County Superintendent and County School
Boards of the several counties of this state sub-
ject to the approval of the State Superintendent
of Public Instruction, are hereby authorized to an-
nually set up the most economical system of trans-
portation possible for the purpose of transporting
both grade and high school pupils from their dis-
tricts, and within their districts. The county
shall be regarded as the unit and the warrant made
payable to the County Board Transportation Fund, on
the total transportation earned within the county
not to exceed the total approved cost thereof; and
the County Board of Education shall distribute the
funds equitably to the districts operating such
transportation system not to exceed the actual ap-
proved cost of any one (1) bus so operated. The
expenses of such transportation shall be paid on
the basis of budgetary need as indicated by ap-
proved State Aid application, out of the funds
herein allocated and appropriated for transporta-
tion aid, not to exceed Three Dollars ($3.00) per
month per pupil for high school pupils and Two Dol-
lars and Seventy-five Cents ($2.75) per month per
pupil for elementary school pupils for those attend-
ing the most convenient accredited school; provided

Honorable M. E. Gates - page 5

that if there be no convenient accredited school
that such pupil may obtain like aid under the pro-
visions of this Article when attending any near
school of higher classification than the sending
district, when designated by the County Board on
the basis of Three Dollars ($3.00) per month per
pupil for high school pupils and Two Dollars and
Seventy-five Cents ($2.75) per month per pupil for
elementary school pupils who reside two and one-
half (2 1/2) miles or more from the nearest school
in such district; provided further, that all school
districts containing one hundred (100) square miles
of territory or more or which have less than one
(1) enumerated scholastic per square mile may re-
ceive Three Dollars and Twenty-five Cents ($3.25)
per month per pupil; provided further, that all
counties having less than three (3) enumerated
scholastics per square mile in the entire county
shall receive Three Dollars and Fifty Cents ($3.50)
per month per pupil as transportation aid when
there is a need shown therefor as provided herein.

"In no instance may aid be granted for pupils
transported who attend a grade in another school,
which grade is taught in such pupil's home district.
No transportation aid shall be granted for a pupil
being transported out of his home school district
if two or more receiving schools are applying for
transportation aid from such pupil's home district
unless the bus routes through such district have
been approved by the State Department of Education
and confirmed by the Legislative Accountant. Aid
shall not be granted under any provisions of this
Article unless the pupil so transported actually
resides more than two and one-half (2 1/2) miles
from the school attended and is transported in an
approved bus over an approved route. Provided that
the County Superintendents shall locate a point on
each bus route two and one-half (2 1/2) miles from
the receiving school, and after such point is es-
tablished he shall personally determine whether the
school is requesting transportation aid on any pup-
il residing within the two and one-half (2 1/2) mile
limit. No transportation aid shall be allowed on
pupils living within the said two and one-half
(2 1/2) mile limit and any district requesting aid
on such pupil shall become ineligible for transpor-
tation aid on each bus transporting such pupils;

provided however, all school districts conforming
to County Unit System of Transportation and re-
ceiving no other type of aid, either tuition or
salary, and comprising three or more consolidated
districts containing fifty (60) square miles or
more of territory, may receive transportation aid
only on a transportation budget showing need there-
for on the basis and at the rate provided in this
Act.

"County Boards of Trustees are hereby author-
ized to employ bus drivers for one year, and the
salary of no bus driver may be paid out of the
County Board Transportation Fund created herein
unless such bus driver is so employed. Provided
further, that only pupils or persons directly con-
nected with the school system shall be transported
on school buses while in the process of transport-
ing pupils to and from the school, and any bus
driver violating the foregoing provisions shall
forfeit his contract and shall be immediately dis-
charged by the County Board of Trustees. However,
subject to the provisions herein, bus drivers who
own their own buses, and are so employed, may be
given a contract for not to exceed two (2) years,
conditioned that said bus drivers agree to make im-
provements on their buses, so as to more adequately
insure safer transportation for the scholastics, and
the route of such bus is not changed for the second
year of the contract.

The crux of your inquiry is whether or not there is a
conflict between Section 1 and Article V of the Act with respect
to the item of transportation aid, and if so, which provision
controls. The task, therefore, becomes one purely of statutory
construction.

The intention of the Legislature, as discovered from
the Act, is the one unfailing rule for construing any statutory
act. That intention is to be gathered from the four corners of
the instrument as a whole, when read in the light of the purpose
as contained in the title, and in the light of each and every
part of the Act considered collectively and separately, constru-
ing the parts, where possible, in such a way that each and every
part may stand as valid, and that no part thereof may be stricken
out or ignored.

Honorable X. E. Gates - page 7

When this Act is thus considered, we reach the conclusion there is no conflict between its parts, and that all parts may stand and be given a meaning consistent with all the other parts.

Specifically, we think there is no conflict between the above-quoted portions, but on the contrary, Section 1 of Article I constitutes the enacting clause covering the whole subject of aid, and Article V deals with the specific subject of transportation aid.

It is a familiar rule of construction of a statute that the office or function of a proviso, exception, or saving clause is to take out of the general enacting clause something that otherwise would be included therein. It is not required that the exception, proviso or saving clause be in the same section, article or part of the Act -- its mechanical place in the construction being of no controlling importance. Sutherland on Statutory Construction thus epitomizes the general rules, as follows:

"It is the office of the proviso to restrict the general operation of the enacting part of the act (Sec. 4932) * * *. Although originally the proviso was to restrict only the section to which it was attached, the modern rule applies the proviso to all sections of the act, if it can be determined that was the legislative intention. Although the form and the location of the proviso may be some indication of the legislative intent, form alone will not control. No presumption should arise from the mere location of the proviso that it is applicable only to the section in which it appears or to preceding sections. (Sec. 4934) * * *. Provisos and exceptions both operate to restrict the generality of legislative language. Normally a proviso occurs within the body of the section, while an exception is drafted as an individual section.

"The older rule strictly interpreted both exceptions and provisos. Today exceptions and to some extent provisos are interpreted principally in view of the legislative intent and no presumption arises because of the form of the Act that the interpretation must be strict. Generally an exception is considered as a limitation only upon the matter which precedes it, but if it is clear from the legislative intent that it is considered a general limitation on

Honorable M. E. Gates - page 8

the entire act it will operate to restrict all pro-
visions of the act." (Sec. 4936)

This rule of construction is akin to, if not identical
with the further rule that an act dealing with a specific sub-
ject will control another act dealing with a general subject that
would otherwise include the specific one.

Applying these well-recognized rules of construction, we
find that Section 1 of Article I deals with the general subject of
eligibility for aid. This would, of course, include transporta-
tion aid, should that section stand alone in the statute. It makes
certain specific requirements in very strong and emphatic terms, as
will be readily seen from the most casual reading thereof.

Article V deals with the narrow, specific subject of trans-
portation aid. It speaks with respect to transportation not only to
and from schools eligible for aid under Section 1, but contains more.
It covers fully the entire subject of transportation, among other
things saying:

"Provided further that all school districts con-
taining one hundred (100) square miles of territory
or more, or which have less than one enumerated scho-
lastic per square mile may receive three dollars and
twenty-five cents ($3.25) per month per pupil; pro-
vided further, that all counties having less than
three (3) enumerated scholastics per square mile in
the entire county shall receive three dollars and
fifty cents ($3.50) per month per pupil as transpor-
tation aid when there is a need shown therefor as
provided herein."

The obvious purpose, we think, of the Legislature was to
make provision, as it did in Article V, for transportation aid, ir-
respective of the question of general eligibility for aid, as re-
quired in Section 1 of Article I.

Our Opinion No. O-2357a mentioned by you, after quoting
Section 10 of the Act, as it then existed, held:

"Special statutory provisions control those which
are merely general. In our opinion, the special pro-
visions of Section 10 relating to transportation aid,
and with respect to districts larger than one hundred
square miles, control and must be given effect. Hence,
if the Graham district contains more than one hundred

square miles, and need for transportation aid is shown, it may receive such aid, if recommended by the Director of Equalization and approved by the joint legislative advisory committee."

We think that opinion announced a correct conclusion under sound principles of statutory construction, and we here now re-affirm it, the present statutes being in all substantial respects the same as those existing when that opinion was written. Any and all subsequent opinions in conflict with this opinion are hereby overruled.

It follows, of course, that any district entitled to transportation aid, under the terms of Article V, is entitled thereto, whether such district complies with any of the general requirements for eligibility, under Section 1 of Article I or not.

Likewise any district that conforms to the County Unit System of transportation, and receives no other type of aid, either tuition or salary, and which comprises three or more independent districts, and contains fifty (50) square miles of territory, and which is applying for transportation aid only on a transportation budget, and which shows a need therefor on the basis and at the rate provided for in the Act, as does Huntsville Independent School District, is entitled to such transportation aid.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

APPROVED MAY 29, 1946

FIRST ASSISTANT
ATTORNEY GENERAL

OS-MR

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE